**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

---

**JAN D. GRAHAM**                                                                                    **PLAINTIFF**

**V.**                                                                                    **CASE NO. 3:11cv68**

**WAL-MART STORES, INC.**                                                                **DEFENDANTS**

---

**MEMORANDUM OPINION**

---

This cause comes before the court on the motion for summary judgment of Wal-Mart Stores, Inc. The plaintiff, Jan D. Graham, has responded in opposition. Upon due consideration of the memoranda and relevant law, the court is prepared to rule.

Graham brings claims of defamation and tortious interference with contract arising out her termination as sales representative from Kraft Foods Global ("Kraft"), allegedly due to Wal-Mart's refusal to allow her to continue servicing three Wal-Mart locations because she violated a gift-giving company policy adopted by Wal-Mart.

Kraft employed Jan Graham for fourteen years until her termination as a sales representative in July 2009.  As sales representative, she serviced three grocery stores and three Wal-Mart stores, the latter of which she serviced seven days a week. At these various sites, Graham ordered, checked in, rotated, merchandised and occasionally stocked Kraft products.

If products were damaged, Graham would issue store credit to Wal-Mart and Kraft would retain ownership in the product. Graham would allow a Wal-Mart employee to check the amount of product kept against the store credit issued. If the damaged product fell below a certain amount, Graham would retain the product and either destroy it, leave it for pick-up by a Kraft truck, keep it, or give it away. Kraft apparently had no specific policy as to which was the preferred course of retention.

1

One day, Graham retained the destroyed product from the Fulton Wal-Mart location and loaded it into a friend's (also a Wal-Mart employee) car in the Wal-Mart parking lot. Wal-Mart picked up this transaction by surveillance camera and launched an investigation into the gift.

Wal-Mart ultimately deemed the transaction to be in violation of its gift and entertainment policy which prohibits suppliers such as Kraft from offering or accepting gifts to Wal-Mart associates that the associate has reason to believe may be given as an attempt to influence business decisions or transactions. A Wal-Mart representative, while maintaining that Graham violated this policy, conceded that no evidence exists to suggest that Graham was trying to influence business decisions. Graham has pointed to evidence that Wal-Mart implemented its policy in less than uniform fashion and often violated it under circumstances similar to those giving rise to this lawsuit.

Graham alleges that the investigation conducted was at best shoddy. For example, Kraft representatives apparently have a car full of damaged products at any given time. Wal-Mart was aware that the damaged product was unloaded from Graham's car, but assumed without asking that it came from the Wal-Mart account, when it could have come from any other account she serviced. Wal-Mart alleged that the product was not credited and was therefore stolen.

Wal-Mart ultimately banned Graham from servicing its stores. Kraft asked Wal-Mart representatives to reconsider, and stated that Wal-Mart was forcing Kraft to fire her if they did not allow her back on the property. Graham's supervisor denies having stated such.[1] Wal-Mart did not reconsider. Graham's supervisor attempted to rezone her service territory, but Kraft ultimately rejected the plan due to travel, work time, and hours.

Rule 56 permits summary judgment where the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.

---

[1] The court does not resolve this factual issue except to construe it in the light most favorable to the plaintiff for purposes of this motion.

Fed. R. Civ. P. 56(a). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Burfield v. Brown, Moore & Flint, Inc.*, 51 F.3d 583, 588 (5th Cir. 1995). When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the nonmoving party and "refrain from making credibility determinations or weighing the evidence." *Coury v. Moss,* 529 F.3d 579, 584 (5th Cir. 2008). "The party seeking summary disposition must demonstrate the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law." *Union Planters Nat. Leasing, Inc. v. Woods*, 687 F.2d 117, 119 (5th Cir. 1985).

## 1. Tortious Interference with Contract

"An at-will employee may have a cause of action for tortious interference with contract…." *Levens v. Campbell*, 733 So. 2d 753, 755 (Miss. 1999). "The elements of tortious interference with a contract include: 1) the acts were intentional and willful; 2) that they were calculated to cause damages to the plaintiffs in their lawful business; 3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant; and 4) that actual loss occurred." *Id.* at 760-761 (citing *Collins v. Collins,* 625 So. 2d 786, 790 (Miss.1993)). "It is not necessary for direct evidence to exist, such as an admission by the defendant that he acted in bad faith. Instead, such a conclusion generally arises as an inference from other evidence. The conclusion, though, must be that the actor was malicious or recklessly disregarding the rights of the person injured." *Morrison v. Mississippi Enter. For Tech., Inc.*, 798 So. 2d 567, 575 (Miss. Ct. App. 2001).

It is clear that Wal-Mart did not unintentionally preclude Graham from that Wal-Mart location, and there is no dispute that actual loss occurred. Whether the acts were calculated to cause the damage or that they were done without justifiable cause on the part of the defendant is another matter.

3

While it appears that Wal-Mart may have acted arbitrarily and unreasonably strict under its employment policy, Graham has been unable to raise a genuine dispute of material fact under the third element. "Ownership of the property is important because it speaks to the third factor of the tort-that the allegedly tortious acts must be performed without right or justifiable cause. It is a basic tenet of property law that a landowner or tenant may use the premises they control in whatever fashion they desire, so long as the law is obeyed." *Biglane v. Under The Hill Corp.*, 949 So. 2d 9, 16 (Miss. 2007). "'So long as the law is obeyed' does not mean so long as exercising the right does not give rise to another, unrelated claim. Instead, as noted in *Ewing,* it means so long as the land itself is being used for a lawful or valid purpose." *Jones v. Norfolk S. Co.*, 348 F. App'x 970, 973 (5th Cir. 2009)(citing *Ewing v. Adams*, 573 So. 2d 1364, 1368 (Miss. 1990)(internal quotations omitted)). Generally speaking, it cannot be malicious for a person to refuse access to others to their private property." *Biglane*, 949 So. 2d at 16.

Graham does not dispute that Wal-Mart owns the property, arguing instead that "here, Jan Graham was not banned from shopping at Wal-Mart or being on Wal-Mart premises in any capacity other than as an employee of Kraft. Indeed, [a Wal-Mart representative] was not even certain whether the ban would apply if Jan was hired by a vendor other than Kraft." In this vein, Graham takes issue with Wal-Mart's cited precedent, which this court finds to be dispositive here and not so limited in application as Graham contends.

In *Jones*, TVM, a trucking and freight management company, operated as an independent contractor for Norfolk, a facility where Jones was dispatched by TVM as an on-site manager where she would supervise the loading and unloading of automobiles. *Jones*, 348 Fed. Appx. at 970. A Norfolk manager, Ron Stock, allegedly made inappropriate gestures to Jones during his monthly visits to the Norfolk site where Jones was stationed. *Id*. A dispute arose between Jones and her immediate supervisor regarding a threatened EEOC charge. *Id*. In the wake of a letter of

4

reprimand, apparently issued for legitimate purposes, her supervisor at TVM relieved Jones of her duties at the Norfolk location because Norfolk had allegedly banned her from the facility. Despite TVM's willingness to relocate her or accept her resignation, Jones filed suit, alleging that these actions constituted a retaliatory discharge. *Id*. at 972. From these facts, the Fifth Circuit affirmed summary judgment on the tortious interference with contract claim based on the property law doctrine previously stated, noting that Norfolk's use of the land was not unlawful "—whatever its motivations for excluding Jones". *Id*. at 973-974.

Here, Wal-Mart undoubtedly operates its location for a lawful business purpose. Therefore, as in *Jones*, it is irrelevant what motivation Wal-Mart had in precluding Graham, regardless of the extent to which she was precluded in this case. That is, the court does not consider it relevant that Graham was allowed access to the store as a customer, but not as a representative.

Having thus failed to raise a genuine dispute of material fact, summary judgment is hereby granted on this claim.

## 2. Defamation

"To establish a claim for defamation, a plaintiff must prove the following elements: (1) a false and defamatory statement concerning plaintiff; (2) unprivileged publication to third party; (3) fault amounting at least to negligence on part of publisher; (4) and either actionability of statement irrespective of special harm or existence of special harm caused by publication." *Armistead v. Minor*, 815 So. 2d 1189, 1193 (Miss. 2002). Mississippi law is well established in holding that in order to bring a claim for defamation, "the words used must have been clearly directed at the plaintiff and the defamation must be clear and unmistakable from the words themselves and not the product of innuendo, speculation or conjecture." *Chalk v. Bertholf*, 980 So. 2d 290, 296 (Miss. Ct. App. 2007).

Graham makes the curious argument that Wal-Mart improperly accused her of giving away product for which no credit was given, but failed to consider the *possibility* that the product might have come from other Kraft accounts. On one hand, if Wal-Mart had not been credited with the product, and the product did indeed come from that Wal-Mart location, then this argument wholly undermines her argument that Wal-Mart had no justifiable right to preclude her from the store. On the other hand, if the product did in fact come from another Kraft account, then the statement is in fact true, because Wal-Mart would certainly not have been given credit for damaged product from different account. Graham's own testimony does little to assist a factfinder in finding that the product came from other accounts instead of the Wal-Mart account. Though she states that she properly credited Wal-Mart for the damaged product, she stated that "yeah, it could have been… I don't know that but, you know, it could have been very easily because, I mean, I had quite a few things in my trunk, I do remember that." Thus, the plaintiff's testimony supports a finding that she improperly gave away product just as much as it does that she did so properly. Under either scenario, Graham has made no showing that would lead a reasonable juror to infer the falsity of any statement.

In fact, Graham has made little showing as to what specific statement was defamatory. Graham points to the testimony of Sandra Law, the recipient of the products, who testified that someone from Wal-Mart said to her "that we hadn't got credit for the stuff that was put in my car." As previously discussed, Graham has done little to put this statement in doubt. Law further testified that there was no indication that Wal-Mart thought that Graham had stolen or shoplifted any product.

Graham also points to the statement of Nannette Houston, a direct shipment receiver at Wal-Mart, who said that a Wal-Mart representative told her that "there were two items [in Sandra Law's car] that weren't on the [credit] sheet." She further testified that, "that's all I

know." While the court hates to see Wal-Mart make arbitrary determinations over two boxes of crackers, there appears to be no remedy in this court as Graham has done little, as previously stated, to establish the falsity of this statement.

From the testimony of Law and Houston, Graham states that this "vicious accusation soon spread. Danny Alexander, an employee of Frito-Lay, informed Jan that the word around Wal-Mart was that Jan had been fired for stealing product." The court considers this "word" to be rumor, not to be distinguished from "the product of innuendo, speculation or conjecture." *See Chalk*, *supra*.

Graham suggests that slander per se is applicable here. Slander per se allows for recovery without a showing of special damages for "words imputing a want of integrity or capacity, whether mental or pecuniary, in the conduct of a profession, trade or business." *Speed v. Scott*, 787 So. 2d 626, 632 (Miss. 2001). Having failed to show specific statements in question, the court finds the doctrine of slander per se to be inapplicable.

This claim is therefore dismissed.

In light of the foregoing, the motion for summary judgment [Dock. 53] is GRANTED. This case is dismissed, and, pursuant to Federal Rule of Evidence 58, a separate judgment will issue in accord with this opinion.

IT IS SO ORDERED, this the 31st day of July, 2013.

**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**